

FILED E-FILED
Wednesday, 09 May, 2007 11:25:09 AM
Clerk, U.S. District Court, ILCD

MAY - 9 2007

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

DERRICK COOKS

      Petitioner-Defendant,

           CR No: 03-10004

           Honorable Michael M. Mihm
           District Judge,

Vs.

           07-1117

UNITED STATES OF AMERICA

      Plaintiff-Respondent,

           SS Affidavit Derrick Cooks

_____/

AFFIDAVIT IN SUPPORT OF MOTION TO VACATE
OR CORRECTION OF SENTENCE UNDER 28 U.S.C. §2255

NOW COMES, Petitioner-Defendant, Derrick Cooks pro-se, in the above styled action, and after being duly sworn, depose and says:

Petitioner is not satisfied with defense counsel (Robert F. Nemzin) due to his failure to provide adequate legal representation in the course of the trial and sentencing stages. Petitioner had meet with counsel at his office prior to proceeding trial to discuss matters of legal strategies. Counsel informed petitioner that there may be a chance of receiving a possible plea agreement, only if, petitioner was to agree to cooperate with the government. At that point, petitioner had declined to accept that sort of offer and decided to rather move forward with trial. At trial, counsel explained his theory of defense of which he advised that petitioner stipulate to possession of crack cocaine because the government could not prove beyond a reasonable doubt that he intended to distribute it. Counsel assured petitioner that if this defense was successful then the remaining charge of possession of the firearm in relation to a drug trafficking crime could

not stand. Counsel concept was that the samll amount of narcotics could only

constitute a simple possession charge. Uncertain about counsel defense theory

petitioner asked if this strategy was the best approach to follow after. Counsel

replied, yesitt is. Based on the advise of counsel petitioner went along with

his theory. Also during trial, petitioner was told by counsel that it would be

necessary, if the court's knew that petitioner agreed to his theory of defense.

Never once was petitioner given a clear understanding from counsel about the

distinction between crack cocaine nor cocaine base before signing to the stipulations.

In general, counsel only explained that petitiooner could get a better deal by

agreeing to simple possession of the drugs, without even specifying whether it

is crack or cocaine base. Further, petitioner did not fully understand the penalty

consequences to his stipulations and would not had agreed to those facts if counsel

would have made him aware of the potential sentence. At no time, before signing

the stipulations was petitioner totally informed about to what extent the expert

witness would testify. In addition, after contacting counsel by phone to find

out how much time that he could be facing at sentencing, counsel stated approximately

a mandatory minimum of ten years for the drugs and five for the firearm. However,

petitioner had thought that he was expecting to receive ten years for the possesion

of drugs because of a prior conviction, and not due to a issue of crack cocaine.

Even reviewing of the presentence investigation report between counsel and petitioner

it was discussed over the phone only for a brief minute. At that time, counsel

never went into any great details about matters of objections. Petitioner believe

that he should have been informed by counsel in regards to the issue of crack

cocaine and cocaine base so that a timely objection could had been raised at

the time of sentencing.

AFFIDAVIT FURTHER SAYS NAUGH
DONE 3 DAY OF MAY 2007

Pursuant to 28 U.S.C. 1746, the petitioner declares under the penalty of perjury
that the discussion stated herein with counsel is true and correct to the best
of his knowledge.

Respectfully submitted,

Derrick Cooks
Reg. # 13084-026
P.O. Box 1000
Milan, MI 48160

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 03-10004 |
| v. | ) | Honorable Michael M. Mihm |
| | ) | Judge Presiding |
| DERRICK COOKS, | ) | |
| | ) | |
| Defendant. | ) | |

### AFFIDAVIT

I, ROBERT F. NEMZIN, on oath, state as follows:

1.    I am a duly licensed attorney admitted to practice law in the State of Illinois since October, 1977 and admitted to practice in the United States District Court for the Central District of Illinois since April, 2003.

2.    I am a partner in the law firm of Hickey and Nemzin, 2536 South California Avenue, Chicago, Illinois.

3.    I was trial counsel for Derrick Cooks in the matter of the United States of America versus Derrick Cooks, 03-10004, a criminal matter in the United States District Court for the Central District of Illinois, Honorable Judge Michael M. Mihm presiding.

4.    Mr. Cooks was charged in the above referenced matter with the offenses of possession of more than five (5) grams of crack cocaine with intent to distribute and, during and in relation to a drug trafficking crime, knowingly possessing and carrying a firearm.

5.    On July 22, 2003, at the conclusion of a trial before the Honorable Judge Mihm and a jury, Mr. Cooks was found guilty as charged.

6.     At trial, the theory of defense was that while Mr. Cooks possessed the crack cocaine, the government could not prove beyond a reasonable doubt that he intended to distribute the crack cocaine. Rather, Mr. Cooks was guilty only of simple possession of the crack cocaine. Had Mr. Cooks prevailed in that regard, the government would not have been able to prove beyond a reasonable doubt the remaining charge of possessing a firearm *in relation to a drug trafficking* crime.

7.     At trial, prior to final argument, despite the defense request, Judge Mihm refused to instruct the jury that it could find Mr. Cooks guilty of the lesser offense of possession of crack cocaine. Rather, the Court stated that it could simply be argued on behalf of Mr. Cooks that the government failed to prove intent to distribute beyond a reasonable doubt.

8.     Prior to trial, I advised Mr. Cooks of the aforementioned trial strategy and he agreed that it was best to pursue the defense of the government's inability to prove beyond a reasonable doubt the offense of possession of crack cocaine with the intent to distribute.

FURTHER SAYETH AFFIANT NOT.

OFFICIAL SEAL
**SUSAN SANDERS**
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 4-9-2007

ROBERT F. NEMZIN

SUBSCRIBED AND SWORN TO
Before me this 25th day of July, 2006.

NOTARY PUBLIC

# ILLINOIS STATE POLICE
Division of Forensic Services
Morton Forensic Science Laboratory
1810 South Main Street
Morton, Illinois 61550-2983
(309) 284-6500 (Voice) * 1-(800) 255-3323 (TDD)

Rod R. Blagojevich
*Governor*

January 28, 2003

Sam W. Nolen
*Director*

INSPECTOR ROBERT BAY
ISP DOO ZONE 4 TASK FORCE
1034 WEST JACKSON
MACOMB IL 61455

Laboratory Case #M03-000079
Agency Case #03-10137

OFFENSE:    Violation of Controlled Substances Act
SUSPECT:    Derrick T. Cooks

The following evidence was submitted to the Morton Forensic Science Laboratory by Inspector Bay on January 9, 2003:

| LAB/AGENCY | ITEM SUBMITTED | FINDINGS |
|---|---|---|
| 1A/1 | 36.8 grams of chunky substance from 24 items | Cocaine base |
| 1B/1 | 2.5 grams of three items containing chunky substance | Not analyzed |

730 ILCS 5/5-9-1.4(b) states that a criminal laboratory analysis fee of $100 shall be imposed for persons adjudged guilty of an offense in violation of the Cannabis Control Act or the Illinois Controlled Substances Act.

Respectfully submitted,

Tranellie Collins
Forensic Scientist

1    arrest.

2    THE COURT:  I don't have any problem with that

3    at all.  We just need to know where he's going to be.  He

4    should check in with probation here today.

5    MR. NEMZEN:  Additionally, Your Honor, there are

6    some other substantive matters I would like to go into if

7    I may.

8    THE COURT:  Go ahead.

9    MR. NEMZEN:  If I may, Your Honor, I just wanted

10    to say after speaking with Mr. Walters, I have made known

11    to him our intent -- Our position here is in essence

12    admitting to possession of the contraband, both the weapon

13    and the narcotics, and our theory here is that the State

14    will not be able to meet their burden of proof beyond a

15    reasonable doubt on the two charges before the Court.  I

16    have explained this in great detail to Mr. Cooks.  In

17    effect, we are conceding the issues of possession of both

18    the narcotics and the weapon.  I would ask the Court if

19    you would inquire of Mr. Derrick Cooks that he is

20    conceding to that theory of defense.

21    THE COURT:  May I ask a clarifying question

22    before that?  So you're not -- in terms of Count 1, you're

23    not -- it's your intention not to deny the possession of

24    more than 5 grams of crack cocaine?  You're disputing that

25    it was possessed with the intent to distribute?

1    MR. NEMZEN:  That's correct.

2    THE COURT:  As to the second charge, you're

3    admitting possession of the firearm, but you're denying

4    that the possession of the firearm was in relation to

5    the --                          *

6    MR. NEMZEN:  Indeed, Your Honor.

7    THE COURT:  Mr. Cooks, have you heard this

8    discussion that we've just had here?

9    MR. COOKS:  Yes, Your Honor.

10    THE COURT:  Has your attorney discussed this in

11    some detail with you?

12    MR. COOKS:  Yes.

13    THE COURT:  Now your attorney of course is an

14    advocate on your behalf and I'm sure he made

15    recommendations to you concerning this, but ultimately

16    this is your decision as to whether or not you wish to

17    admit the possession of the firearm and the possession of

18    the drugs.  Otherwise the burden of course would be on the

19    Government to prove the possession beyond a reasonable

20    doubt.  Do you understand that?

21    MR. COOKS:  Yes.

22    THE COURT:  Is it your decision to admit the

23    possession of the firearm and the drugs as we've just

24    discussed?

25    MR. COOKS:  Yes.

1          THE COURT:  All right.  And it is your decision;

2     is that correct?

3          MR. COOKS:  Yes.

4          THE COURT:  Okay.

5          MR. NEMZEN:  Your Honor, may I clarify one

6     matter?  In that regard, I used the term "admit" as it

7     will be throughout our theory of argument and I

8     cross-examination.  I do not anticipate that the defendant

9     himself --

10          THE COURT:  I understand.

11          MR. NEMZEN:  May I address the Court on two more

12     matters?  Your Honor, the Court has heard from the

13     evidence at the motion to suppress certain items of

14     evidence, including prior arrest information that the

15     officers received through their communications, also

16     officer Fillingham's belief he saw a tattoo on the hand of

17     Mr. Cooks that he believed to be a gang tattoo, also the

18     fact that the weapon that was seized was ultimately

19     determined to be a stolen weapon.

20               Ordinarily I would have moved in limine and

21     asked the Court to bar such evidence, but, if I'm correct,

22     Mr. Walters has agreed the State will not make any

23     reference or present any evidence regarding prior arrests,

24     the gang tattoo or the stolen weapon.

25               THE COURT:  Is that correct?

1    possession for distribution.

2        THE COURT:  This language of it being consistent

3    with an amount to be used for distribution is typically

4    the language that's used here.  I don't think --

5        MR. MURPHY:  Any questions will be framed as

6    such, is it consistent with an intent to distribute and is

7    it consistent or inconsistent with personal use.  Those

8    will be the types of questions I will be asking, Judge.

9        THE COURT:  Fine.

10        MR. NEMZEN:  Thank you, Your Honor.

11        THE COURT:  Yes?

12        MR. WALTERS:  Just briefly, Your Honor.  I

13    tender to the Court stipulations of the parties signed by

14    counsel and Mr. Cooks.

15        THE COURT:  Let me take a minute and look at

16    this.  This document entitled "Stipulations" contains

17    seven numbered paragraphs that set out various

18    stipulations concerning physical evidence and what expert

19    witnesses would testify to if they were called to testify.

20    Are these matters that you have carefully discussed with

21    your client?

22        MR. NEMZEN:  Yes, Your Honor, indeed, and he has

23    signed off on that as well after reviewing it and speaking

24    with me.

25        THE COURT:  All right.  Is that correct,

1    MR. COOKS: Have you discussed each of these items

2    separately?

3         MR. COOKS: Yes, Your Honor.

4         THE COURT: And, again, you understand that you

5    certainly can, as it appears you have done here, stipulate

6    to the admission of these so these matters do not have to

7    be formally presented during trial, but you certainly have

8    the right to hold the Government to their burden of proof

9    and require that they present evidence on each of these

10   matters, for example including as to the drugs or the

11   firearm chain of custody, things like that.  Have you

12   discussed those matters with your attorney?

13        MR. COOKS: Yes, Your Honor.

14        THE COURT:  Is it your decision, as he has just

15   announced and you've reflected by signing this document,

16   is it your decision to stipulate to those matters?

17        MR. COOKS: Yes, Your Honor.

18        THE COURT:  Okay.  What else?  Anything?

19        MR. MURPHY:  I have two other brief matters,

20   Your Honor.  Mr. Aaron Freeman is a law student.  He has

21   been admitted to practice under the supervision of an

22   attorney by Judge McDade, has appeared in a couple of

23   sentencing hearings to this point, and we are going to be

24   asking him to do the direct examination of one of our

25   witnesses.  I wanted the Court to understand that under

1    stipulations now.  Is that agreeable?

2                 MR. NEMZEN:  No objection.

3                 THE COURT:  Okay.  I told you during my

4    preliminary instructions that evidence could be presented

5    to you by way of stipulation.  A stipulation is something

6    upon which the parties agree and very often stipulations

7    are used as a way of saving time and resources.  If there

8    is no dispute, there's no reason to call certain witnesses

9    to prove the particular item.  In this case the parties

10   have entered into certain stipulations and I'm going to

11   read those to you now and you should consider these in the

12   same way that you would any other evidence.

13                 Now come the United States of America, by its

14   attorneys, Jan Paul Miller, U.S. Attorney for this

15   District, and Greggory R. Walters, Assistant U.S.

16   Attorney, and Derrick T. Cooks, by his attorney, Robert F.

17   Nemzen, and hereby agree and stipulate as follows:

18                 One:  Government Group Exhibit 1 is 39.3 grams

19   of cocaine base, that is crack cocaine, that was tested

20   and weighed by Tranellie Collins, a forensic scientist

21   from the Illinois State Police Forensic Laboratory.  A

22   proper chain of custody has been maintained at all times

23   for Government Group Exhibit 1.  Government Group

24   Exhibit 1 is admitted into evidence.

25                 Two:  Government Exhibit 1A is the outer

1    caliber pistol, and that he found Government Exhibit 2 was

2    able to fire.

3             Seven:  ~~If called to testify, John V. Dienker, a~~

4    ~~forensic scientist from the Illinois State Police~~

5    ~~Laboratory would testify that he examined Government~~

6    ~~Exhibit 1A, the outer packaging of the cocaine-base~~

7    ~~crack, and that he examined Government Exhibit 2, the~~

8    ~~firearm, for fingerprints.  He would further testify that~~

9    ~~he found no fingerprint impressions suitable for~~

10   ~~comparison.~~

11            That is the end of the stipulations.  Are we

12   ready for the next witness?

13            MR. WALTERS:  Yes, Your Honor.  The Government

14   calls Officer Anthony Fillingham.

15                    **ANTHONY FILLINGHAM,**

16   Having been first duly sworn, was examined and

17   testified under oath as follows:

18                    **DIRECT EXAMINATION**

19   Q    Officer Fillingham, please introduce yourself to the

20   jury and spell your last name.

21   A    My name is Anthony Lee Fillingham.  Last name is

22   F-I-L-L-I-N-G-H-A-M.

23   Q    Officer Fillingham, what's your job?

24   A    I work as a police officer for the City of Macomb

25   here in Illinois.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Case No. 04 CR 709 |
| | ) | |
| ROBERT COLLINS | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Robert Collins was indicted by a grand jury on three narcotics charges. Each of the charges alleged that on a particular date, Collins knowingly and intentionally distributed a specified quantity of a Schedule II controlled substance, specifically cocaine base in the form of crack cocaine, in violation of 21 U.S.C. § 841(a)(1). On May 5, 2005, Collins pled guilty to all three charges. Before Collins entered his guilty plea, the parties explained to the Court that Collins desired to plead guilty to each of the charges but reserve the question of the specific Schedule II controlled substance involved:

> MR. YOUNG (defense counsel): ... [I]f I could, before we get into the factual basis, Mr. Collins' desire is to plead to the indictment but to reserve argument on the nature of the controlled substance and ask the Court to have a hearing at sentencing or prior to make a determination as to the nature of the controlled substance.

> THE COURT: Let me ask you this. When we get to the factual basis, what is the factual basis going to be as to what the substance was?

> MR. YOUNG: A Schedule 2 [sic] controlled substance is what he would admit to, and the issue is whether or not it's crack cocaine or not basically.

> MR. HOTALING (prosecutor): So going through my factual basis, what I intend to do is just to – at every point in time when we have this particular drug is to indicate a Schedule 2 controlled substance.

THE COURT: All right. So, in other words, what you are saying is that the gravamen of the charge is the possession [sic] of a Schedule 2 controlled substance, and so he is pleading to that, and it can be determined at some later ponit what particular Schedule 2 controlled substance it was.

Tr. May 5, 2005 at 2-3. It was further explained that determination of whether the substance involved was crack cocaine would impact both the maximum and minimum offenses. *Id.* at 3-4.

During the plea colloquy, the Court explained to Collins that the sentence on the charges to which he was pleading guilty would depend on the nature of the substance involved: if it was crack cocaine, the maximum on each charge would be life imprisonment and the minimum would be ten years; if it was not crack cocaine, the maximum would be thirty years and there would be no mandatory minimum. *Id.* at 11.

The Court also explained to Collins, clearly and unequivocally, that he had the right to have the issue of the nature of the substance involved determined by proof that would have to establish beyond a reasonable doubt that the substance was crack cocaine:

THE COURT: Now, you have a right to have the nature of the substance, in other words, what type of Schedule 2 controlled substance it is – you have the right to have that determined at a trial by a jury. Do you know that?

THE DEFENDANT: Yes, sir.

THE COURT: As I understand what you are doing here is you are going to be admitting that you distributed on each one of these dates the particular quantities of a Schedule 2 controlled substance, and you are going to leave it to be to decide later on, after hearing from both sides, what particular type of Schedule 2 controlled substance it was. Am I right about that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that when you are doing that, you are going to be asking me to decide it rather than a jury, and so it's just going to be up to me to make that decision? Do you understand that?

2

Following entry of the guilty plea, the Court conducted an evidentiary hearing at which the government undertook to prove that the substance Collins had distributed was crack cocaine. We will discuss later the evidence adduced at the hearing. Following the hearing, the Court questioned the propriety of a guilty plea in which the defendant admits to some, but not all of the elements of an offense and agrees to a lower burden of proof as to the remaining elements. The Court requested further briefing. The government filed a brief in which it argued that the issue of the type of narcotic was a sentencing issue, not an element of the offense, and that a defendant may waive both judicial fact finding and application of the reasonable doubt standard. Collins filed a brief in which he argued that the government's burden of proof cannot properly be waived, and that even if it can, he "was misinformed and his waiver of the standard of proof was therefore not knowingly made." Dfdt. Suppl. Mem. at 3.

Since *Apprendi v. New Jersey,* 530 U.S. 466 (2000), any fact that subjects the defendant to a higher maximum sentence must be proven to a jury beyond a reasonable doubt. In a § 841 case, determination of whether the narcotic the defendant distributed was crack cocaine is such a fact. But that does not make the type of narcotic an element of a § 841 offense. As the government argues, the Seventh Circuit has held that "drug type and quantity remain sentencing issues," though the fact finder and the burden of proof have changed as a result of *Apprendi. See United States v. Knight,* 342 F.3d 697, 710 (7th Cir. 2003); *Horton v. United States,* 244 F.3d 546, 552 (7th Cir. 2001).

A defendant's rights under *Apprendi* – that is, his rights to have factors that increase a sentence determined by a jury, pursuant to the standard of proof beyond a reasonable doubt – are subject to waiver. In *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 2541 (2004), the

4

Court made it clear that "nothing prevents a defendant from waiving his *Apprendi* rights." Though the notion of a defendant's waiver of the reasonable doubt standard of proof gives the Court pause, Collins has offered no compelling reason why this important right should be treated any differently from other equally important rights – such as the right to counsel and the right to trial by jury – that are unquestionably subject to waiver. *See Illinois v. Tovar,* 541 U.S. 77, 80 (2004) (right to counsel); *Faretta v. California,* 422 U.S. 806, 835 (1975) (same); *Brady v. United States,* 397 U.S. 742, 748 (1970) (right to trial by jury).

The Court also rejects the belated claim that Collins did not knowingly waive his right to have the issue of the type of narcotic proved beyond a reasonable doubt. During the plea colloquy, quoted at length earlier, the Court carefully explained to Collins that he had the right to have the issue proved by that standard, closing with the specific and unambiguous admonition that the government "will have to prove simply that it is more likely than not that the substance was crack, and they won't have to prove it beyond a reasonable doubt." When the Court asked Collins whether he understood this, he unequivocally said that he did. Tr. May 5, 2005 at 13-14. Under the circumstances, the unsupported contention of counsel that Collins "was misinformed and [that] his waiver of the standard of proof was not knowingly made," Collins Suppl. Mem. at 3, simply does not hold water. Collins' waiver of the reasonable doubt standard was knowing and intelligent and was made with awareness of the circumstances and possible consequences. *See Brady,* 397 U.S. at 748.

The Court therefore proceeds to discuss the evidence presented at the hearing. The government offered a tape recording of a conversation between Collins and an informant in which arrangements were made for the purchase of narcotics. The recorded conversation

5

reflected that the informant asked to purchase, and Collins agreed to sell, crack cocaine. Following that meeting and other, later meetings between Collins and the informant at which money and suspected narcotics were exchanged, government agents recovered quantities of a substance that they said, based on their training and experience, had the appearance (color and texture) and smell of crack cocaine. One of the agents admitted on cross examination that crack cocaine can vary in color, and another testified that powder cocaine, like crack cocaine, can be chunky in texture.

The government also called Heather Miller, a Drug Enforcement Administration forensic chemist with a doctorate in analytical chemistry who had analyzed the substances recovered following the three transactions at issue. Miller testified that there are three distinct substances that fall under the heading of "cocaine base": coca paste, the substance produced during the extraction of cocaine from coca leaves; "freebase" cocaine, a substance produced by dissolving powder cocaine in water and adding a base (such as ammonia) until a precipitant is produced, which in turn is dissolved in ether and filtered out; and crack cocaine, the street term for a substance produced by mixing powder cocaine with a base (usually sodium bicarbonate) and water, and then applying heat. Miller said she had never had an occasion to test or work with coca paste or freebase cocaine.

On cross examination, Miller testified that there is no chemical distinction between "cocaine base" and crack cocaine – in other words, both have the same chemical formula. She also testified that she would not rely on visual inspection or smell to conclude that a particular substance was cocaine base.

Miller testified that it is possible to find traces of sodium bicarbonate in samples of crack

cocaine. This occurs when too much sodium bicarbonate is used in the preparation process and not all of it is used up in the reaction. If, however, the correct proportions are used, no trace of sodium bicarbonate will be found in the end product. Miller testified that each of the three samples she tested included "cocaine base" and that each tested negative for sodium bicarbonate.

Collins called Michael Evans, who has a doctorate in toxicology and has testified in a number of federal criminal cases on the subject of identification of crack cocaine. Evans explained the differences between powder cocaine, freebase cocaine, and crack cocaine. Powder cocaine (cocaine hydrochloride) is water soluble and is not volatile; it is injected or inhaled, but not smoked. Freebase cocaine is prepared by dissolving powder cocaine in water and adding a base (such as sodium hydroxide). The resulting substance is dissolved in ether and then is desiccated to produce freebase, an extremely volatile substance which is smoked. Crack cocaine is made by mixing powder cocaine with sodium bicarbonate and adding water, and heating the mixture. Evans testified that crack can be distinguished from other forms of cocaine base by the presence of bicarbonate and also by the fact that when burned, a crackling sound can be heard.

Evans testified that Miller's laboratory reports did not establish that the substances she tested were crack cocaine, as there was no indication of the presence of bicarbonate. Evans stated that it is not possible for all the sodium bicarbonate used in making crack cocaine to be used up in the preparation process and thus that the absence of bicarbonate in a particular substance means that it is not crack cocaine. Evans, like Miller, testified that determination of whether a particular substance is crack cocaine cannot be made by visual inspection or smelling; indeed, he testified, the odor of crack (in and of itself, as distinguished from other substances mixed in with it) is not different from that of other forms of cocaine base.

7

On cross examination, Evans admitted that he does not have a doctorate in chemistry (though his undergraduate degree was in chemistry and biology) and that he had not analyzed the substances at issue in this case. He also agreed that crack cocaine is not chemically distinguishable from other forms of cocaine base. Evans also testified that crack cocaine can vary in color and texture.

Neither Miller's nor Evans' testimony entirely made sense to the Court. The predicate for Miller's testimony was that the person(s) who made the substances tested somehow managed to use precisely the exact amount of sodium bicarbonate needed to make crack cocaine, without any excess. In view of the fact that the alleged crack was being produced by amateurs without chemical degrees not working in a laboratory, this seems extraordinarily unlikely. *Cf. United States v. Waters*, 313 F.3d 151, 153 (3d Cir. 2002) (quoting the testimony of a DEA chemist to the effect that "traditionally, what we find is that out on the street an excess of this bicarbonate is used in the conversion," thus leaving traces in the tested sample). Evans' references to "bicarbonate" likewise did not entirely make sense to the Court; from the Court's relatively rudimentary understanding of chemistry, "bicarbonate" molecules (as distinguished from sodium bicarbonate) do not exist in a solid form. But the government offered no testimony, during its case in chief or in rebuttal, to attempt to refute Evans' testimony from a chemical standpoint.

As the Seventh Circuit recently stated, "[a]ll crack is cocaine base but not all cocaine base is crack." *United States v. Edwards*, 397 F.3d 570, 571 (7th Cir. 2005). Though the statute under which Collins was prosecuted criminalizes distribution of cocaine base, the Seventh Circuit has held that in enacting the statute, Congress intended "cocaine base" to mean only crack cocaine, not other forms of cocaine base. *Id.* at 571-72; *see also, United States v. Booker*, 70 F.3d 488,

8

494 (7th Cir. 1995). The same is true of the corresponding provision of the Sentencing

Guidelines. *Id.* at 571; *see* U.S.S.G. § 2D1.1(c), application note D. The government is required

to prove, in this case by a preponderance of the evidence, that the substance Collins distributed

was crack.

Though the Sentencing Guidelines refer to crack as being commonly prepared using

sodium bicarbonate, the Seventh Circuit has held that this does not require the government to

show that sodium bicarbonate was used in the production of a particular substance. *United States*

*v. Abdul,* 122 F.3d 477, 479 (7th Cir. 1997). But the crux of Evans' testimony was that unless

traces of a base that can be used to produce crack are found in the sample, the sample is not crack.

The government's evidence identified no other substance that the evidence showed could be used

to produce crack. Miller's analyses detected the presence of nicotinamide, but neither she nor any

other government witness testified that crack can be made by using this substance in lieu of

sodium bicarbonate or some other form of bicarbonate. The government does not contend that the

presence of nicotinamide satisfies Evans' requirement of trace amounts of a substance used to

make crack or is otherwise indicative that the substance tested was crack cocaine.

The Third Circuit held in *Waters* that "it is *not* necessary for the government to show that a

substance contains sodium bicarbonate in order to demonstrate by a preponderance of the

evidence that the drugs in question are crack cocaine." *Waters,* 313 F.3d at 155 (emphasis in

original). The court has also held a "'precise chemical analysis is not necessary to prove that

cocaine base is crack under the Sentencing Guidelines.'" *Id.* (quoting *United States v. Dent,* 149

F.3d 180, 190 (3d Cir. 1998)). But in *Waters,* the only testimony presented was that of the

government agents and chemist; there was no countervailing scientific testimony such as that

9

offered by Evans.

It is also true that "testimony of witnesses familiar with crack, combined with direct evidence that the substance had the appearance of and was packaged like crack, is sufficient to satisfy the government's burden of proof." *United States v. Linton,* 235 F.3d 328, 330 (7th Cir. 2000). But in *Linton* and similar cases, the defendant presented no countervailing chemical evidence. In this case, evidence was presented from a qualified expert who testified unequivocally that the government's testing did not prove the presence of crack. The testimony of the government agents was considerably less than airtight, given the admission that there is variation in the appearance of both crack and powder cocaine, and Evans' testimony regarding the lack of a distinctive odor for crack. And even though there is no doubt that the informant negotiated to buy, and Collins negotiated to sell, crack cocaine, their agreement to deal in that substance is far less than conclusive. It is not at all uncommon for sellers of illicit drugs to defraud buyers about what they are buying; the sale of such substances is closely related to the narcotics trade, which is one reason why a number of states ban dealing not just in listed narcotics but also "look-alike" or counterfeit substances." *See, e.g.,* 720 ILCS 570/407.

In sum, though the evidence in this case is close, it is insufficient to sustain the government's burden of proof.

### Conclusion

The Court finds that the government failed to sustain its burden of proving that Collins distributed crack cocaine, as opposed to some other form of cocaine base. Collins will therefore be sentenced pursuant to the statutory minimums and maximums that apply when the substance

distributed is a form of cocaine other than crack.

/s/ Matthew F. Kennelly
MATTHEW F. KENNELLY
United States District Judge

Date: October 11, 2005

11